NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DONALD COOK, <br><br> Plaintiff, <br><br> v. <br><br> UNION TOWNSHIP, *et al.*, <br><br> Defendants. | No. 23cv1924 (EP) (JBC) <br><br> OPINION |

**PADIN, District Judge.**

Plaintiff Donald Cook ("Cook" or "Plaintiff") is a retired police officer formerly employed by Defendant Union Township (the "Township" or "Defendant"). Cook sued the Township[1] for unpaid overtime in violation of the Fair Labor Standards Act ("FLSA"), D.E. 24 ("Amended Complaint" or "Am. Compl.") at 5-7, and the New Jersey Wage Payment Law[2] ("NJWPL"), *id.* at 7-8, as well as for breach of contract for allegedly being required to work weekend on-call duty in violation of the governing collective bargaining agreement,[3] *id.* at 9-10.

The Township moves to dismiss the Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). D.E. 32-20 ("Mot."). The Court has reviewed the parties' submissions and decides the motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, the Township's motion will be **GRANTED in part** and **DENIED in part**. Counts I and III will proceed. Count II will be **DISMISSED** *without prejudice*.

---

[1] Cook also names unspecified parties John Does (1-10) and ABC Corps. (1-10) as defendants.
[2] N.J. Stat. Ann. 34:11-4.1 *et seq.*
[3] D.E. 32-9 (the "Agreement").

I. BACKGROUND

A. Factual Background[4]

The Township employed Cook as a police officer from 1994 until his retirement in 2022. Am. Compl. ¶¶ 1-2. From 2003 until his retirement, Cook was a detective in the Detective Bureau's Identification Unit (the "ID Unit"). *Id.* ¶ 2.

The terms of Cook's employment were governed by an Agreement between the Township and the Township's Policemen's Benevolence Association Local 69 (the "PBA"). *Id.* ¶¶ 6, 55. The Agreement defines "overtime" for a "4/3 work schedule"[5] as all work performed in excess of 10 hours per day or 40 hours per week and specifies that overtime hours are "compensated at the rate of time and one-half for two (2) hours or for all hours worked, whichever is greater." Agreement at 12-13. The Agreement defines "on call" as "the status of readiness for return to duty whereby the officer is prepared to respond within thirty (30) minutes to an assigned duty location," and provides that such time spent on call is only compensable for detectives if actually "called in for duty." *Id.* at 13. ID Unit detectives cannot be assigned to weekend on-call duty under the Agreement. *Id.* at 14.

Nevertheless, from July 2005 until March 11, 2021, Cook, as one of only two ID Unit detectives, was assigned weekend "on-call" duty—on average, every other weekend—which was more than other detectives who only had to work weekend "on-call" shifts 5-6 times per year on average. Am. Compl. ¶¶ 12, 58. When Cook was on-call, he could not go on vacations, attend social events, or consume alcohol, and had to stay nearby so he can be ready to be called in for duty. *Id.* ¶ 22. Cook had no flexibility in the on-call schedule or shifts. *Id.* ¶ 24.

---

[4] The facts in this section are taken from the well-pled factual allegations in the Amended Complaint, which the Court presumes to be true for purposes of resolving the motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5] The Detective Bureau has a "4/3 work schedule." D.E. 32-9 at 9.

Cook notified the PBA and the Township that he should be compensated for weekend on-call duty and attempted to file grievances that were rejected by the Township.[6]  *Id.* ¶¶ 12-15. Despite this notification, the Township still refused to pay Cook for weekend on-call time.  *Id.* ¶ 15.

On March 11, 2021, the Township relieved Cook from weekend on-call duty, despite Cook's earlier "complaints and grievances filed against [the Township] to be excluded" from on-call duty.  *Id.* ¶¶ 59-60.  Cook "was never compensated for the time that represented work over the 40-hour time period."  *Id.* ¶ 28.

**B.     Procedural Background**

Plaintiff filed an initial complaint on April 5, 2023, alleging three counts:

- Count I: failure to pay overtime compensation for all work time spent on weekend on-call duty beyond the regular work period in a knowing, willful, or reckless violation of the FLSA, D.E. 1 at 4-6;
- Count II: failure to pay overtime compensation for all work time spent on weekend on-call duty beyond the regular work period in a bad faith violation of the NJWPL, *id.* at 6-7; and
- Count III: breach of Agreement for assigning Cook to weekend on-call duty, *id.* at 7-9.

Defendant moved to dismiss the original complaint under Rules 12(b)(1) and 12(b)(6).  D.E. 11.  On November 3, 2023, the Court granted Defendant's motion and dismissed the original complaint without prejudice.  D.E. 22.  The Court concluded that the presumptive two-year statute of limitations period for an unpaid overtime FLSA claim expired on or around March 11, 2023, but that if Plaintiff pled a willful violation of the FLSA, he would be entitled to a three-year statute

---

[6] Cook does not specifically allege when the Township was notified that he should be paid for weekend on-call time.  Based on the correspondence Cook attaches to his opposition, he contacted the PBA on January 1, 2021, D.E. 36-1 at Ex. B, and, on February 2, 2021, the PBA President notified a Township official by the name of "Director Zieser" that Cook "would like to file a grievance regarding On Call for the Detective Bureau," *id.* at Ex. C.  The Court may consider these documents as their authenticity is not disputed and the allegations in the Amended Complaint appear to be based on them.  *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

of limitations, expiring on March 11, 2024. D.E. 21 at 7. However, the Court concluded that the original complaint lacked factual allegations that Plaintiff alerted Defendant to the allegation that it is required to pay him for weekend on-call time. *Id.* at 9. Therefore, the Court concluded that Plaintiff's FLSA claim was time-barred by the two-year statute of limitations and granted Plaintiff leave to amend his complaint to attempt to allege a willful violation of the FLSA. *Id.* at 10. The Court declined to exercise supplemental jurisdiction over the remaining state law claims. *Id.*

Plaintiff filed an Amended Complaint on December 6, 2023, alleging the same three counts as in the original complaint. Am. Compl. Defendant then filed the instant motion to dismiss the Amended Complaint. Mot. Plaintiff opposes. D.E. 36 ("Opp'n"). Defendant replies. D.E. 38 ("Reply"). The Court determined that the parties did not adequately brief whether Plaintiff states a NJWPL claim and ordered supplemental briefing on that limited issue. D.E. 40. In response, Defendant and Plaintiff submitted supplemental briefs addressing the NJWPL claim. D.E. 41 ("Supp. Mot."); D.E. 42 ("Supp. Opp'n").

## II.    LEGAL STANDARDS

### A.    Federal Rule of Civil Procedure 12(b)(1)[7]

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) challenges the subject matter jurisdiction of the court. Fed. R. Civ. P. 12(1). "[A] court must grant a [Rule 12(b)(1)] motion to dismiss if it lacks subject matter jurisdiction to hear a claim." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) ("*Temodar*"); *see* Fed.

---

[7] "When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *Dickerson v. Bank of Am., N.A.*, No. 12-03922, 2013 WL 1163483, at *1 (D.N.J. Mar. 19, 2013) (quoting *In re Corestates Trust Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993), *aff'd* 39 F.3d 61 (3d Cir. 1994)).

4

R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action.").

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is considered a "facial challenge" when it "attacks the complaint on its face without contesting its alleged facts." *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016). If a defendant brings a Rule 12(b)(1) motion before answering the complaint or "otherwise present[ing] competing facts," the Rule 12(b)(1) motion is, "by definition, a facial attack." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) (citation omitted). When reviewing a facial attack, the court "must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (first citing *Mortensen v. First Fed. Sav. And Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977); then citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

### B.     Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) permits the dismissal of a case for failure to state a claim. Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss for failure to state a claim, the reviewing court accepts all well-pled facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted). To survive a Rule 12(b)(6) challenge, the plaintiff's claims must be facially plausible, meaning that the well-pled facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Finally,

"[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

### III. ANALYSIS

#### A. Plaintiff's FLSA Claim Is Timely[8]

Defendant argues that Plaintiff's FLSA claim is time-barred by a two-year statute of limitations because Plaintiff failed to adequately plead "willfulness" in connection with his FLSA claim.[9] Mot. at 12-15. The Court finds that that Plaintiff, albeit barely, alleges that, for at least some time, the conduct underlying the FLSA claim was willful. Therefore, a three-year statute of limitations applies to that conduct and Count I is not time-barred to the extent it is based on a willful violation of the FLSA.

The statute of limitations for an unpaid overtime claim under the FLSA is "two years after the cause of action accrued." *Hernandez v. Polly Inc.*, No. 22-1244, 2022 WL 17850347, at *4 (D.N.J. Dec. 21, 2022) (internal quotations omitted) (quoting *Acosta v. Holland Acquisitions, Inc.*,

---

[8] While a statute of limitations defense generally "must be raised in the answer," this Circuit "permits a limitations defense to be raised by a motion under Rule 12(b)(6) . . . if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002). Dismissal is appropriate on statute of limitations grounds where it is apparent from the complaint's face that the cause of action is time-barred. *Demby v. City of Camden*, No. 20-13893, 2022 WL 4377197, at *3 (D.N.J. Sept. 22, 2022) (citing *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017)).

[9] Here, Defendant asserts a facial 12(b)(1) challenge to Plaintiff's FLSA claim. *See Aichele*, 757 F.3d at 358 (noting that the defendant's motion, by definition, was a facial attack because it was filed before any answer to the complaint had been filed or competing facts had otherwise been presented); *see also Mortensen*, 549 F.2d at 892 n.17 ("A factual jurisdictional proceeding cannot occur until plaintiff's allegations have been controverted."); *Askew v. Church of the Lord Jesus Christ*, 684 F.3d 413, 417 (3d Cir. 2012) ("As the defendants had not answered and the parties had not engaged in discovery, the first motion to dismiss was facial."). Therefore, the Court considers the allegations in the light most favorable to Plaintiff.

6

No. 15-1094, 2018 WL 6242231, at *5 (W.D. Pa. Nov. 29, 2018) (first citing 29 U.S.C. § 255(a); then citing *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1296 (3d Cir. 1991))). However, the two-year period is extended to three years if the claim arises out of a willful violation of the FLSA. *Id.*

Here, the presumptive two-year statute of limitations period expired on or around March 11, 2023—two years after Plaintiff was relieved from weekend on-call duty, Am. Compl. ¶ 60. *See Genarie v. PRD Mgmt., Inc.*, No. 04-2082, 2006 WL 436733, at *14 (D.N.J. Feb. 17, 2006) ("A separate cause of action for overtime compensation accrues at each regular payday immediately following the work period during which services were rendered and for which the overtime compensation is claimed.") (cleaned up). Thus, Plaintiff's FLSA claim, which was originally filed on April 5, 2023, D.E. 1, is time-barred unless he sufficiently pleads a willful violation of the FLSA, *Buchspies v. Pfizer, Inc.*, No. 18-16083, 2019 WL 5078853, at *4 (D.N.J. Oct. 10, 2019)—that is, that Defendant "either 'knew' its conduct was prohibited by the FLSA or 'showed reckless disregard for the matter,'" *Souryavong v. Lackawanna Cnty.*, 872 F.3d 122, 126 (3d Cir. 2017) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).

To sufficiently plead willfulness "'it is insufficient to merely assert that the employer's conduct was willful; the [c]ourt must look at the underlying factual allegations in the complaint to see if they could support more than an ordinary FLSA violation.'" *Buchspies*, 2019 WL 5078853, at *4 (quoting *Ochoa v. Pearson Educ., Inc.*, No. 11-1382, 2012 WL 95340, at *3 (D.N.J. Jan. 12, 2012)). "[W]illfulness 'does not require a showing of egregiousness.'" *Liu v. Cheng DU 23 Inc.*, No. 17-12867, 2022 WL 4217150, at *6 (D.N.J. Sept. 13, 2022) (quoting *Stone v. Troy Constr., LLC*, 935 F.3d 141, 150 (3d Cir. 2019)). It does, however, "'require[] a more specific awareness of the legal issue' as opposed to general awareness." *Id.* (quoting *Souryavong*, 872 F.3d at 126); *see also Souryavong*, 872 F.3d at 126 ("Acting only 'unreasonably' is insufficient—some degree

of actual awareness is necessary."). An employer's "awareness of a possible [FLSA] violation and 'indifference toward the requirements imposed by the FLSA,' . . . supports a finding of willfulness." *Antoine v. KPMG Corp.*, No. 08-6415, 2010 WL 147928, at *7 (D.N.J. Jan. 6, 2010) (quoting *Martin*, 949 F.2d at 1296).

For example, in *Hernandez*, willfulness was sufficiently pled where the plaintiff alleged (1) "he regularly worked an average of 59 hours per week"; (2) "he was never paid time-and-a-half for any of his overtime hours"; and (3) "[d]efendant neither tracked his hours nor required him to record his time despite [defendant's] responsibility to 'maintain employment records.'" *Hernandez*, 2022 WL 17850347, at *5; *see also Garcia v. Tenafly Gourmet Farms, Inc.*, No. 11-6828, 2012 WL 715316, at *2 (D.N.J. Mar. 5, 2012) (finding that plaintiff sufficiently pleaded willfulness by alleging similar facts). Conversely, willfulness was not sufficiently pleaded where the plaintiffs alleged that their employer denied their repeated requests for overtime compensation because "[a]t best, this conduct would constitute only a negligent violation of the FLSA, . . . [not that] the [defendant] knew or recklessly disregarded a risk that it was violating the FLSA." *Pignataro v. Port. Auth.*, 593 F.3d 265, 273 (3d Cir. 2010). *But see Gaytan v. G&G Landscaping Constr., Inc.*, 145 F. Supp. 3d 320, 327-28 (D.N.J. 2015) (finding that the plaintiff sufficiently pleaded employer's reckless disregard by alleging that after "inform[ing] at least two of [the defendant's] employees, including its owner, that he was not being fully compensated[,] . . . [the] owner replied that [the defendant] was not obligated to pay [the plaintiff] for [such time]"); *Jelks v. Newark Cmty. Health Ctrs.*, No. 13-886 2013 WL 6154438, at *4 (D.N.J. Nov. 22, 2013) (finding that willfulness was not pleaded where the plaintiff did not allege that the defendant "disregarded her complaints [about being denied compensation, or] . . . expressed concern that their behavior in not paying her for this time may not be legal").

8

Here, though the Amended Complaint lacks specific or robust allegations as to Defendant's willfulness, the allegations still satisfy the liberal notice pleading standard. Plaintiff alleges that he notified Defendant that he should be compensated for weekend on-call duty and attempted to file grievances that were rejected by Defendant. Am. Compl. ¶¶ 12-15. Despite this notification, Defendant still refused to pay Plaintiff for weekend on-call time. *Id.* ¶ 15. Defendant argues that the correspondence attached to Plaintiff's opposition indicate that Plaintiff's only two contacts with Defendant occurred in April 2021, after he was relieved of on-call duty, and thus cannot be the basis for a finding of willfulness under the FLSA. Mot. at 13-15. The Court shares Defendant's concern for a potential lack of proof. However, Plaintiff is not obliged to provide proof of Defendant's notice of a potential FLSA violation at the motion to dismiss stage. Construing the Amended Complaint liberally, and drawing all inferences in Plaintiff's favor, he adequately alleges that Defendant was on notice of a possible FLSA violation and acted indifferently to it, for at least *some* period of time. *See Garcia*, 2012 WL 715316, at *2. Therefore, at the motion to dismiss stage, the Court cannot conclude that Count I is categorically time-barred.

However, based on the correspondence Plaintiff attaches to his opposition, the Court is skeptical that, without more, he will ultimately be able to prove that the Defendant was on notice of FLSA violations for a significant amount of time, if at all, given that he was relieved of weekend on-call duty on March 11, 2021 and the correspondence he attaches discussing his concerns about on-call time compensation begins only in January 2021.[10] Opp'n at Exs. C-G. Any period of time that Defendant did not "either [know] its conduct was prohibited by the FLSA or show[] reckless disregard for the matter," cannot form the basis of a willful FLSA violation. *Souryavong*, 872 F.3d

---

[10] Even the pre-March 2021 correspondence does not clearly show that Defendant was on notice of a potential FLSA violation.

9

at 126 (cleaned up); *see Garcia*, 2012 WL 715316, at *2. Therefore, once discovery has been completed, if Defendant believes there is no factual dispute that there was no relevant time—or a limited period of time—in which it knew its conduct was prohibited by the FLSA or showed reckless disregard for the matter, it may move for full or partial summary judgment on this count.

  **B.  Plaintiff States a FLSA Claim (Count I)**

  Defendant also argues that Plaintiff's FLSA claim fails under Rule 12(b)(6) because he has not adequately pled that the weekend on-call time interfered with his personal pursuits. Mot. at 17-23. The Court disagrees; Plaintiff's FLSA claim (Count I) will proceed.

  The FLSA requires employers to pay overtime compensation for a non-exempt employee's work that is in excess of forty hours per week. *Buchspies*, 2019 WL 5078853, at *2 (citing 29 U.S.C. § 207). "To state a plausible FLSA claim, 'a plaintiff must sufficiently allege forty hours of work in a *given* workweek *as well as* some uncompensated time in excess of the forty hours.'" *Id.* at *3 (quoting *Davis v. Abington Mem'l Hosp.*, 767 F.3d 236, 242 (3d Cir. 2014)) (emphasis in original). The specific number of overtime hours worked is not required at the motion to dismiss stage—"a plaintiff's claim that she typically worked forty hours per week, worked extra hours during such a forty-hour week, and was not compensated for extra hours beyond forty hours . . . worked during one or more of *those* forty-hour weeks, would suffice." *Id.* (quoting *Davis*, 767 F.3d at 243) (cleaned up) (emphasis in original).

  Defendant argues that Plaintiff's on-call time is not compensable under the FLSA. Mot. at 17-23. On-call time is compensable work under the FLSA under two circumstances: (1) if the employee is "required to remain on premises"; or (2) "if the employee, although not required to remain on the employer's premises, finds his time on-call away from the employer's premises is so restricted that it interferes with personal pursuits." *Ingram v. Cnty. of Bucks*, 144 F.3d 265, 268 (3d Cir. 1998) (citing 29 C.F.R. § 553.221(c), (d)). The second situation is at issue here.

10

Resolving the question of whether on-call time interferes sufficiently with an employee's private life to constitute compensable time under the FLSA is "fact-specific." *Id.* The Third Circuit has listed four relevant factors: (1) "whether the employee may carry a beeper or leave home"; (2) "the frequency of calls and the nature of the employer's demands"; (3) "the employee's ability to maintain a flexible on-call schedule and switch on-call shifts"; and (4) "whether the employee actually engaged in personal activities during on-call time." *Id.*

Factual disputes as to how a plaintiff may spend his on-call time require fact finding. *See id.* at 267 (finding that the "issue of *how* a plaintiff spends his on-call time is one of fact and therefore, cannot be resolved on summary judgment" and that only "once there is no genuine issue of material fact as to how plaintiff spends his on-call time, the determination of whether a plaintiff's activities exclude him from the overtime benefits of the FLSA is a question of law, which can properly be resolved on summary judgment") (cleaned up) (emphasis in original). Indeed, courts have declined to weigh these factors in detail at the pleading stage so long as a plaintiff states a plausible claim for relief. *See, e.g.*, *Razak v. Uber Techs., Inc.*, No. 16-573, 2016 WL 7241795, at *6 (E.D. Pa. Dec. 14, 2016) ("The Ingram factors are relevant to the Plaintiffs' burden of proof that they were 'working' while on-call. However, the Court will not require Plaintiffs to plead with any more specificity than they already have . . . . Details . . . will be learned through discovery."); *Bansept v. G & M Auto.*, 434 F. Supp. 3d 253, 259 (E.D. Pa. 2020) ("Through discovery, Plaintiff will have the opportunity to establish that his on-call time off premises is compensable.").

*Jacobs v. City of Philadelphia*, No. 19-4615, 2021 WL 199547 (E.D. Pa. Jan. 20, 2021) is analogous and persuasive. There, the plaintiff, a Philadelphia detective, alleged that, while on-call, "he cannot be far from his office as he must be able to promptly respond," "he is not permitted

11

to drink alcoholic beverages while on[-]call," he "cannot socialize with family and friends who reside far from his home," he cannot "go down [to] the Jersey shore," and "cannot be in any geographic area that would make it too cumbersome to return to his office in a timely fashion." *Id.* at *6. In *Jacobs*, the court found that, at the motion to dismiss stage, the allegations stated a plausible claim for relief under the FLSA because the plaintiff provided examples of how the on-call policies interfere with his personal life. *See id.* at *6. The court further found that whether the plaintiff could establish that he was entitled to compensation for all the time spent on-call is a "question to be answered *after discovery*, at which point the *Ingram* factors w[ould] be considered in more detail, if a motion for summary judgment is filed." *Id.*

Here, like in *Jacobs*, Plaintiff similarly alleges that he could not go on vacations, attend social events, consume alcohol, and had to stay nearby work to be ready to be called in for duty. Am. Compl. ¶ 22. It is plausible that the details of these allegations could be sufficient to satisfy the *Ingram* factors, but, at this stage, the factual record is not developed enough to determine, as a matter of law, that Plaintiff's on-call time is not compensable under the FLSA. Therefore, Count I will proceed.

> C.  **The Court Has Supplemental Jurisdiction Over Plaintiff's State Law Claims**

Where the Court has original jurisdiction over a claim, such as a federal statutory claim, it also has "supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C § 1367(a); *see United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). Under 28 U.S.C § 1367(a), "a district court may exercise supplemental jurisdiction where state-law claims share a 'common nucleus of operative fact' with the claims that supported the district court's original jurisdiction." *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 308 (3d Cir. 2003) (quoting *Gibbs*, 383 U.S. at 725). Supplemental jurisdiction

promotes "judicial economy, convenience and fairness to litigants." *Id.* (quoting *Gibbs*, 383 U.S. at 726).

Here, supplemental jurisdiction is present over Plaintiff's state law claims. The same facts make up the FLSA and NJWPL claims. Although the breach of contract claim also contains the independent issue of whether being assigned to be "on-call" itself constitutes a breach of the Agreement, the facts giving rise to that claim are almost identical to those giving rise to the FLSA and NJWPL claims. Therefore, the facts relevant to the state claims are part of the same common nucleus as those relevant to the FLSA claim and the Court will exercise supplemental jurisdiction over the state law claims.

### D.      Plaintiff May Pursue His Breach of Contract Claim (Count III)

Defendant argues that the Court lacks jurisdiction over Plaintiff's breach of contract claim, Count III, because he has failed to exhaust his administrative remedies under the Agreement. Mot. at 15-17. The Court finds that Defendant's prior conduct has repudiated the administrative remedies under the Agreement and is therefore estopped from enforcing them now. Therefore, Plaintiff's breach of contract claim (Count III) will proceed.

A plaintiff is generally required to exhaust remedies created by a collective bargaining agreement, prior to bringing suit for breach thereof, if the agreement requires such remedies to be exhausted. *See Falzo v. Cnty. of Essex*, No. 03–1922, 2008 WL 2064811, at *11 (D.N.J. May 14, 2008). However, there are at least two situations where a plaintiff may obtain judicial review of his breach of contract claim despite his failure to follow grievance procedures contained within a collective bargaining agreement: (1) where the "conduct of the employer amounts to a repudiation of those contractual procedures," and (2) where a "union has sole power under the contract to invoke the higher stages of the grievance procedure, and . . . the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's wrongful refusal to process the

13

grievance." *Vaca v. Sipes*, 386 U.S. 171, 186 (1967). Under the second situation, the plaintiff would need to show that the "union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance." *Id.*

Here, Article XIII of the Agreement establishes a grievance procedure (the "Grievance Procedure") to address "any controversy arising over the interpretation, application or violation of any of the provisions of this Agreement." Mot. Ex. F at 29. The Grievance Procedure can be initiated by an individual covered by the Agreement or by the PBA on behalf of the individual or a group of individuals covered by the Agreement. *Id.*

The Grievance Procedure sets forth a three-step process for raising grievances. Step 1 is to present the grievance in writing to the "Chief of Police/Police Director or his designee" within ten working days from the time the grievance arose. *Id.* If the grievance is denied at Step 1 or if the response is not satisfactory to the grievant or the PBA, Step 2 is to present the grievance to the "Township Administrator or his designee" within five working days of the disposition at Step 1. *Id.* If the grievance is not satisfactorily resolved at Step 2, Step 3 is for the PBA to present the grievance in writing within seven days of the grievance disposition at Step 2 to the New Jersey Public Employment Relations Commission for the appointment of an arbitrator for a binding arbitration. *Id.* at 30.

Defendant argues that, although Plaintiff followed Step 1 of the procedure by complaining to the PBA, the PBA submitting a grievance to the Police Director, and the Police Director denying the grievance, neither Plaintiff nor the PBA pursued the grievance further into Step 2 or Step 3. Mot. at 16 (citing Mot. Ex. H). Plaintiff argues that he satisfied the grievance procedure by requesting the PBA to file grievances, the PBA filing a grievance, that grievance being denied by Police Director Zieser, Plaintiff presenting his grievance to Township Business Administrator

14

Travisano, and the grievance still being denied. Opp'n at 16-17 (citing D.E. 36-1 at Exs. C-I). In its Reply, Defendant argues that Plaintiff's Opposition misidentifies communications with the PBA as communications with Defendants and that, other than the February 2, 2021 grievance Police Director Zieser received and denied, Mot. at Ex. H, the only other grievance presented to Defendant was a letter submitted by Plaintiff's counsel on January 6, 2023, Mot. at Ex. N. Reply at 6-7. The parties do not dispute the authenticity of the relevant correspondence exhibits and the relevant exhibits appear identical in Plaintiff's and Defendant's filings.

Plaintiff argues that he satisfied Step 2 of the Grievance Procedure by presenting his grievance to Township Business Administrator Travisano, Opp'n at 17. Plaintiff cites a March 9, 2021 letter to the PBA Local 69 President, Joseph Sauer, where Plaintiff wrote that Sauer advised him that Sauer "spoke with Director Zieser and Business Administrator Don Travisano about this matter and that they advised [Sauer] to file the grievance with the attorney." D.E. 36-1 at Ex. D. The rest of the correspondence cited by Plaintiff are emails or letters between Plaintiff and Sauer, *id.* at Exs. E-F, a letter from a Fraternal Order of Police Attorney to a member of the Fraternal Order of Police, *id.* at Ex. G, a letter from Plaintiff's counsel to Defendant's Police Director, Chris Donnelly, *id.* at Ex. H, and a response to that letter from Donnelly, *id.* Ex. I.

However, the Court need not decide whether Step 2 was complied with[11] because there is no dispute that Step 3 was not followed. Neither party asserts the PBA presented Plaintiff's grievance, in writing, to the New Jersey Public Employment Relations Commission for the appointment of an arbitrator, as required by the Grievance Procedure. Despite Plaintiff's request

---

[11] The Court notes that Defendant's Police Director, Chris Donnelly, stated that Step 2 was, in fact, complied with in his January 12, 2023 letter to Plaintiff's counsel. D.E. 36-1 at Ex. I

15

that the PBA escalate his grievance to arbitration, *see* D.E. 36-1 at Ex. E, it appears the PBA never did so.

The question thus becomes whether Plaintiff may obtain judicial review of his breach of contract claim despite his failure to follow the Grievance Procedure. He can. Although not cited by either party, *Vaca* is directly on point. There, the Supreme Court explained that there are at least two such situations: (1) where the "conduct of the employer amounts to a repudiation of those contractual procedures," or (2) where a "union has sole power under the contract to invoke the higher stages of the grievance procedure, and . . . the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's wrongful refusal to process the grievance." 386 U.S. at 186. Under the second situation, the plaintiff would need to show that the "union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance." *Id.*

Here, despite it appearing that the PBA did not follow through with Plaintiff's grievance into Step 3, Plaintiff does not allege that the PBA breached a duty as a bargaining agent under the Agreement. But Plaintiff does argue that Defendant repudiated the Grievance Procedure by writing that Plaintiff's claim is not subject to the Grievance Procedure since he is a former employee. Opp'n at 18. Plaintiff cites a January 12, 2023 letter from Defendant's Police Director, Christopher Donnelly, in response to a January 6, 2023 letter from Plaintiff's counsel wherein Donnelly wrote that Plaintiff can no longer pursue a grievance under the Agreement since he is a former employee. D.E. 36-1 at Ex. I. Defendant cannot have it both ways—it cannot insist on the Grievance Procedure now when it claimed earlier that it no longer applies.[12] Therefore, its prior

---

[12] The Court notes that Donnelly's January 12, 2023 letter also stated that the grievance was untimely under the Grievance Procedures. D.E. 36-1 at Ex. I. Had that been the only basis to deny

16

actions repudiating the Grievance Procedure estops its insistence on those very same procedures now. *See Vaca*, 386 U.S. at 185. Plaintiff's breach of contract claim (Count III) will proceed.

      **E.     Plaintiff Concedes That He Does Not State a Claim for Violation of the New Jersey Wage Payment Law (Count II)**

Defendant argues that the NJWPL is inapplicable here and Plaintiff should have brought his NJWPL under the New Jersey Wage and Hour Law[13] ("NJWHL") but that even if Plaintiff had filed under the NJWHL, his claims fail to state a claim under that law as well. Supp. Mot. In response, Plaintiff concedes that the NJWPL does not apply to his claims but asks the Court to grant leave to amend to plead violations of the NJWHL and the New Jersey Wage Theft Act[14] ("NJWTA"). Supp. Opp'n. The Court will **DISMISS** Plaintiff's NJWPL claim (Count II) *without prejudice* and will permit Plaintiff to file a second amended complaint to attempt to state a claim under the NJWHL and/or the NJWTA.

"The NJWPL governs 'the manner, mode, and time of wage payment, as well as when an employer may withhold part of an employee's paycheck.'" *Stebbins v. Petroleum Equip. Servs.*, No. 21-15117, 2022 WL 717166, at *9 (D.N.J. Mar. 9, 2022) (quoting *Piscopo v. Pub. Serv. Elec. & Gas Co.*, No. 13-00552, 2014 WL 3014284, at *5 (D.N.J. Jul. 3, 2014)). The NJWPL provides, in part, that an employer is prohibited from "withhold[ing] or divert[ing] any portion of an employee's wage unless the employer is required or empowered to do so by New Jersey or United States law" or the wage is withheld pursuant to other statutory exceptions. N.J. Stat. Ann. § 34:11-4.4.

---

the grievance, it would be unlikely that would constitute a repudiation of the Grievance Procedures.
[13] N.J. Stat. Ann. § 34:11-56a4.
[14] N.J. Stat. Ann. § 34:11-4.10.

17

The NJWHL, on the other hand, "sets the amount for minimum wage and overtime rates." *Rodriguez v. Canada Dry Bottling Co.*, No. 14-6897, 2015 WL 5770502, at *3 (D.N.J. Sept. 30, 2015) (citing N.J. Stat. Ann. § 34:11-56a4). "'[G]enerally, claims for failure to pay overtime are brought under the NJWHL . . . whereas claims that wages have not been timely paid or that inappropriate deductions by the employer have been made . . . are brought under . . . the' NJWPL." *Id.* (quoting *Mitchell v. C & S Wholesale Grocers, Inc.*, No. 10-2354, 2010 WL 2735655, at *5 (D.N.J. July 8, 2010)).

Defendant argues that Plaintiff is not able to state a claim under the NJWHL because Plaintiff does not allege he was not paid when called in for duty. Supp. Mot. at 3. However, Plaintiff argues that he was entitled to overtime payment even for on-call time spent waiting. *See supra*. "The court should freely give leave" for a plaintiff to amend his complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). Here, because the "NJWHL is interpreted similarly to the FLSA and provides a parallel cause of action for nonpayment of . . . overtime compensation," and because the Court has found Plaintiff states an FLSA claim, the Court finds that justice is served by allowing Plaintiff to amend his complaint to state a NJWHL claim. *Morales v. Aqua Pazza LLC*, No. 20-6690, 2022 WL 1718050, at *3 (D.N.J. May 27, 2022) (citing *Perez v. Express Scripts, Inc.*, No. 19-07752, 2020 WL 7654305, at *2 (D.N.J. Dec. 23, 2020); N.J. Stat. Ann. §§ 34:11-56a4(a)-(b), 34:11-56a25).

As for the NJWTA, the statute was passed in 2019 and "explicitly granted the right for a private party to bring suit for lost wages and liquidated damages up to an amount equal to 200% of their actual damages, court costs, and attorney's fees." *Davis v. Erigere Rapidus Sols. ERS, Inc.*, No. 23-23279, 2024 WL 2795899, at *5 (D.N.J. May 31, 2024) (citing *Jones v. HESP Solar*, No, 20-13056, 2021 WL 1904734 at *5 (D.N.J. May 12, 2021); N.J. Stat. Ann. § 34:11-4.10).

Again, Plaintiff claims he is owed overtime wages for on-call time that Defendant has not paid. It cannot be said that amendment would be futile under these circumstances. Justice requires that Plaintiff be given a chance to amend his complaint to attempt to assert a NJWTA claim. *See* Fed. R. Civ. P. 15(a)(2); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008). Therefore, Count II will be **DISMISSED** *without prejudice*. Plaintiff may file a second amended complaint to attempt to state a claim under the NJWHL and/or the NJWTA.

IV.     CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss will be **GRANTED in part and DENIED in part**. Counts I (FLSA) and III (Breach of Contract) will proceed. Count II (NJWPL) will be **DISMISSED** *without prejudice*. Plaintiff may file a second amended complaint within 30 days of the Order accompanying this Opinion to attempt to state a claim under the NJWHL and/or the NJWTA.

Dated: August 28, 2024

_____
Evelyn Padin, U.S.D.J.